OPINION
{¶ 1} Dameon Bell appeals from his conviction in the Montgomery County Common Pleas Court of gross sexual imposition in violation of R.C. 2907.05(A)(4).
 {¶ 2} The facts underlying the appellant's appeal are set out in the appellant's brief and are supported by our review of the trial record.
 {¶ 3} The events giving rise to this case occurred on December 25, 2001. On that evening, C.S., age 11, was in her bedroom playing a game called Connect Four with her cousin, J.W., age 14. Around 11:00 p.m. or 11:30 p.m., C.S.'s mother returned home from a Christmas party accompanied by De-Angelo Haygood and Dameon Bell. Neither C.S.nor J.W. had ever met Dameon before. De-Angelo went into C.S.'s room and sat in a chair. Dameon came into the room and played the game with C.S. He then asked for some water.
 {¶ 4} J.W. went into the kitchen to get a glass of water for Dameon. As J.W. returned to the bedroom with the water, she heard Dameon say to C.S., "I bet you don't have any pussy hairs yet." C.S.replied, "How would you know?" Dameon also made a sexually explicit hand gesture to one or both girls wherein he made a circle with one hand and then pushed a finger through the circle. Eventually, C.S.'s aunt, P., who was in the living room, told the girls it was time for bed. When C.S. walked over toward the door of her room to turn out the light, Dameon grabbed her hand and then touched the vaginal area over C.S.'s clothing. C.S.pushed Dameon away, telling him to stop. Dameon left the bedroom, but came back a short time later and said, "Nice meeting you," before leaving the house.
 {¶ 5} C.S.then began to cry. She told J.W. what had happened but decided not to tell her mother until the next morning. C.S.'s mother telephoned the police after hearing about what occurred. Two Dayton Police officers, Joseph Wiesman and Doug George, arrived at C.S.'s home and took a report of the incident from the night before. In his sole assignment of error, Bell contends his trial counsel was constitutionally ineffective for failing to object to certain testimony presented at trial. Specifically, Bell objects that C.S. was permitted to testify that she told J.W. what "happened" to her. Bell also objects that C.S.was permitted to testify without objection that she told her mother, the police, and persons at Care House the same version of events as her trial testimony.
 {¶ 6} Also, Bell contends his trial counsel should have objected to the hearsay testimony of Officer Wiesman at pages 110-111 of the trial transcript:
 {¶ 7} "A. . . . And while [J.W.] was gone to get a glass of water she said her mom yelled in, `you guys turn the lights off and get in bed.' She said she got up to go turn the lights off. At this time the defendant was standing in the doorway, which is right next to the light switch. As she went to turn the light switch off she told me that he grabbed her arm that went for the light switch, and with his other hand rubbed her private area, her vaginal area." (Tr. 110-111).
 {¶ 8} Bell also contends his trial counsel should have objected to Officer Wiesman's testimony that he spoke to J.W. and that she confirmed C.S.'s version of the assault. (Tr. 117). Bell also contends J.W. should not have been permitted to testify that her cousin, P., kept trying to get Bell to leave the house so C.S.could go to bed. (Tr. 67).
 {¶ 9} Bell concedes that C.S.'s original statements to J.W. were probably admissible under the hearsay exception for excited utterances. He argues however that the victim's statements to her mother, Officer Wiesman, and the Care House staff impermissibly bolstered C.S.'s credibility and deprived him a fair trial. He contends his counsel's conduct fell below an objective standard of reasonableness, and but for those unprofessional errors, the trial result would have been different. He contends the inadmissible testimony bolstered the complainant's credibility when there was no other evidence of his guilt.
 {¶ 10} Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid. R. 801(C).
 {¶ 11} The state argues that C.S.'s testimony does not contain any hearsay because her testimony does not contain any "assertions." The state notes that C.S.never repeats any statements she made to J.W., her mother, the police, or the Care House staff. The state notes that C.S.merely testified she told J.W. "what happened" and merely told her mother, the police, and Care House staff the same thing as she had testified at trial.
 {¶ 12} We find the state's arguments that C.S.out of court statements were not "assertions" to be disingenuous. Although C.S. did not explain in detail her prior statements, she did say those statements were the same as her trial testimony. This testimony was certainly assertions covered by the hearsay rule.
 {¶ 13} The traditional view has been that a prior statement, "even one made by the witness," is hearsay if it is offered to prove the matters asserted therein. Federal R. 801(C) captures the orthodoxy . . . "hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing. The logic of the orthodox view is that the previous statement of the witness is hearsay since it rests on the credit of the declarant, who when the statement was made, was not (1) under oath, (2) in the presence of the trier of fact, or (3) subject to cross-examination. McCormick on Evidence, Vol. 2, at Sec. 251 (Fifth Ed.); also see Weissenberger's Ohio Evidence, 2004 Courtroom Manual at 341.
 {¶ 14} Evid. R. 801(D) provides "a statement is not hearsay if:
 {¶ 15} "(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (a) inconsistent with his testimony, and was given under oath subject to cross-examination by the party against whom the statement is offered and subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (b)consistent with his testimony and is offered to rebut an express orimplied charge against him of recent fabrication or soon after perceivinghim, if the circumstances demonstrate the reliability of the prioridentification." (Emphasis added).
 {¶ 16} The prior consistent statements of C.S. were not offered by the state to rebut an express or implied charge against her of recent fabrication or improper influence or motive.
 {¶ 17} The state agrees that Officer Wiesman's testimony recounting the statements made to him by C.S. and J.W. Wells was improper hearsay. The state argues that the admission of this testimony was harmless because the testimony was merely cumulative.
 {¶ 18} The Ohio Supreme Court held in State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373 that a two-step process is usually employed by the reviewing court in addressing an allegation of counsel ineffectiveness. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Id. at 141. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness. Id., citation omitted. This standard is essentially the same as the one enunciated by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674. Therein the United States Supreme Court stated that when a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Reviewing courts are required to indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. Defense counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. State v. Bradley,supra, at 142, citing Strickland, supra.
 {¶ 19} An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no probable effect on the judgment. State v. Bradley,supra, at 142, citations omitted. To warrant reversal, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id., citing Strickland, supra. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. In other words, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors. State v.Bradley, supra, at 143, citing Strickland, supra.
 {¶ 20} Assuming that counsel should have objected to the improper hearsay evidence, we agree with the State that Bell failed to show us that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different.
 {¶ 21} The jury certainly would have expected that the child victim would have reported Bell's conduct to her mother and that her mother might report the incident to the police. C.S. was available for cross-examination. As Wigmore, who originally adhered to the traditional view regarding prior statements by in court witnesses observed, "here, however, by hypothesis the witness is present and subject to cross-examination. There is ample opportunity to test him as to the basis for his former statement. The whole purpose of the hearsay rule has been satisfied." 3A Wigmore, Evidence § 1018 at 966. (Chadbourn Rev. 1970). Indeed, under the Model Code of Evidence Rule 503(b) all prior statements of the witnesses, regardless of their nature, would be exempt from the ban of the hearsay rule. No one from Care House testified but Officer Wiesman was available for cross-examination concerning C.S's and J.W.'s statements to him. The assignment of error is overruled.
 {¶ 22} Judgment of the trial court is Affirmed.
Wolff, J., and Grady, J., concur.